Bienvenido V. HERMOGENES,
Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 94–212.

United States Court of Veterans Appeals.

April 11, 1996.

Bruce Tyler Wick was on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koeber, Deputy Assistant General Counsel; and Amy S. Gordon were on the brief, for appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

FARLEY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a concurring opinion.

FARLEY, Judge:

This is an appeal from a March 1, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which (1) found that the appellant's non-service-connected disability pension was properly terminated on February 1, 1990, and (2) denied entitlement to reinstatement of non-service-connected pension benefits effective February 1, 1991. Although the underlying facts are not in dispute, this appeal presents an issue of statutory interpretation not previously addressed by this Court. For the reasons that follow,

the Court will affirm the decision of the Board.

## I. BACKGROUND

The appellant served on active duty in the United States Navy from June 1946 to October 1948. Record (R.) 23–25. In July 1989, four months prior to his sixty-fifth birthday, the appellant filed a claim for a non-service-connected disability pension. R. at 44–47. Pension benefits were awarded effective November 1, 1989, based upon the presumption created by the then-controlling law that he was permanently and totally disabled by virtue of having attained the age of sixty-five on October 2, 1989. R. at 73.

Having been compulsorily retired at age sixty-five from his job with the Philippine government, the appellant received lump sum gratuity benefit payments on December 29, 1989, in the amount of 316,507 pesos, and on January 31, 1990, in the amount of 111,125 pesos. R. at 85–89. In August 1990, he was notified by the regional office (RO) that his non-service-connected pension was discontinued effective February 1, 1990, because those benefit payments caused his annual income to exceed the $10,014 maximum allowable under 38 U.S.C. § 1521. R. at 75. The appellant was further informed that he could reapply for a VA pension on or after February 1, 1991. R. at 75.

In February 1991, the appellant applied for reinstatement of his pension benefits. R. at 126–27. By letter dated February 19, 1991, the appellant was advised that as a result of a change in law he was no longer eligible for pension benefits upon turning sixty-five and that in order to qualify for pension benefits, he was required to submit evidence of a permanent and total disability and inability to obtain and maintain gainful employment. R. at 135. The appellant did not respond to this letter or submit the required evidence, and in May 1991, his claim for entitlement to a non-service-connected disability pension was denied. R. at 139.

Shortly thereafter, the appellant requested and was granted a hearing during which he testified that he did not have a permanent and total disability which would prevent him from working. R. at 155. In July 1991, an RO hearing officer denied reinstatement of benefits. R. at 163–64. In August 1991, the appellant filed a Notice of Disagreement raising as issues the discontinuance of benefits in February 1990 and the denial of reinstatement of benefits in May 1991. R. at 168. In August 1992, the BVA issued a decision remanding the case so that the RO could address the issue of whether pension benefits were properly discontinued and so the appellant could undergo a physical examination. R. at 183–90.

In April 1993, the RO issued a decision determining, inter alia, that a permanent and total disability rating was not warranted. R. at 222. In June 1993, the RO issued a Statement of the Case (SOC) regarding whether the appellant's benefits were properly terminated (R. at 225–33) and a Supplemental SOC regarding the denial of reinstatement of his benefits (R. at 238–48). In March 1994, the BVA issued a decision which determined that the appellant's pension was properly terminated in 1990 because his annual income that year exceeded the statutory limit, and that, based upon a memorandum from the VA Central Office, he was not entitled to the reinstatement of pension benefits because the evidence did not show that he was entitled to a permanent and total disability rating. R. at 6–16.

## II. TERMINATION OF BENEFITS

Pursuant to the applicable law and regulation effective on the dates on which the appellant received lump sum gratuity benefit payments, a veteran with two dependents seeking a non-service-connected pension was subject to an annual income limitation of $10,014. 38 U.S.C. §§ 1521, 5312; 38 C.F.R. § 3.23 (1995); 54 Fed.Reg. 45,887 (Oct. 31, 1989). Except for several discrete classes of income not at issue here, "all payments of any kind or from any source," including retirement payments, are included in annual income. 38 U.S.C. § 1503(a).

The record indicates that the appellant received lump sum gratuity benefit payments totalling 427,632 pesos. The BVA concluded that these payments were equal to $19,376 and caused the appellant's income for the

relevant twelve month period to exceed the $10,014 maximum allowable under 38 U.S.C. § 1521. R. at 11. The appellant does not dispute the BVA's calculation, but instead argues that because the retirement benefit payments were for services rendered over a thirty-four year period, they should not be considered income exclusive to the relevant pension period. R. at 251–2.

The regulations clearly contemplate the inclusion of this type of lump sum retirement payment as income in one annualization period. Section 3.271 of title 38 of the Code of Federal Regulations provides that income received on a one-time basis during a twelve-month annualization period, i.e., "nonrecurring income," is to be included in pension computations of income for the twelve-month annualization period following receipt. 38 C.F.R. §§ 3.271(a)(3) (1995); see also 38 C.F.R. § 3.273(d) (1995). Section 3.271(a) further provides that "Payments of any kind from any source" are included in income "unless specifically excluded under § 3.272." Lump sum retirement benefits are not among the specified exclusions. 38 C.F.R. § 3.272 (1995). As the appellant has not demonstrated that the Board committed either factual or legal error in arriving at its conclusion that the appellant's income exceeded the statutory ceiling, the Court will affirm the decision of the BVA with respect to the termination of benefits. See Gilbert v. Derwinski, 1 Vet.App. 49 (1990).

## III. ENTITLEMENT TO REINSTATEMENT OF BENEFITS

The version of § 1502 in effect when the appellant filed his original claim for a non-service-connected pension provided that a veteran would be considered to be permanently and totally disabled at the age of sixty-five. 38 U.S.C. § 1502 (1988). In 1990, after the appellant's benefits were terminated, but before he was eligible to request reinstatement, § 1502 was amended to eliminate the presumption of permanent and total disability for those sixty-five and over. Omnibus Budget Reconciliation Act, Pub.L. No. 101–508, § 8002 (1990). The revised statute is applicable to "claims filed after October 31,

1990." *Ibid.* Thus, veterans filing claims after the effective date will be considered permanently and totally disabled only if they are unemployable as a result of a lifetime disability or, if not unemployable, suffer from a lifetime disability which would render it impossible for the average person with the same disability to follow a substantially gainful occupation. 38 U.S.C. § 1502(a); *see Brown v. Derwinski,* 2 Vet.App. 444, 446 (1992); *cf. Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) (only "where the law or regulation changes *after a claim has been filed or reopened* but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should . . . apply" (emphasis added).).

The determinative issue here, therefore, is whether the appellant's 1991 request for reinstatement of benefits is a "claim" filed after October 31, 1990. If so, the appellant must meet the new, stricter criteria of § 1502 by providing evidence that he is unemployable by reason of a permanent and total disability. If, however, his request for reinstatement was a mere continuation of his original claim and not an independent claim, he is entitled to establish a permanent and total disability by virtue of his being over sixty-five. The 1990 amendment to § 1502, by its terms, would then not apply to his claim because it was filed before October 31, 1990.

 It is apparent from the BVA decision that the appellant's 1991 request for reinstatement was treated by the BVA as an independent, and therefore a new claim. R. at 11. The Board relied upon a memorandum from the VA Central Office dated March 1993 (R. at 219) citing the preamble to a proposed revision of 38 C.F.R. § 4.17 implementing Public Law 101–508:

Public Law 101–508 eliminated the presumption of pension eligibility at age 65 for all claims filed after October 31, 1990. . . . If pension entitlement is terminated *for any reason,* eligibility must be determined under the new criteria upon receipt of a reopened claim.

56 Fed.Reg. 20,395 (May 3, 1991) (emphasis added). After the requisite notice and comment period, the proposed rule was adopted, without modification, effective December 16,

1991. 56 Fed.Reg. 57,985 (Nov. 15, 1991). Based upon this language, the BVA concluded that the appellant could establish eligibility for a pension only by satisfying the new criteria, i.e., by "demonstrating, through medical evidence, that he is permanently and totally disabled." R. at 112. In so holding, the BVA effectively construed the language of Public Law 101–508 to require that claims to reinstate previously terminated pensions be treated as new claims.

■ The Supreme Court has held that an interpretation of a statute by the administrative agency charged with administering it is entitled to deference to the extent that the administrative construction, whether reached by adjudication or by rulemaking, is not inconsistent with the statutory mandate and does not frustrate the policy that Congress sought to implement. *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981). In determining whether the BVA's interpretation is inconsistent with the statutory mandate, the Court must inquire into whether the Secretary's construction is " 'sufficiently reasonable' " to be accepted by a reviewing court. *Id.* at 39, 102 S.Ct. at 46, citing *Train v. Natural Resources Defense Council,* 421 U.S. 60, 75, 95 S.Ct. 1470, 1479–80, 43 L.Ed.2d 731 (1975); *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978).

The Secretary's interpretation of Public Law 101–508 appears to be both reasonable and consistent with the statutory mandate and legislative intent. In this regard, the Board's interpretation furthers, rather than frustrates, the intent of Congress to eliminate awards of pension benefits based solely upon an individual's age. Further, the BVA's interpretation is reasonable insofar as it comports with other rules promulgated by the Secretary. While not free from doubt, the regulations and VA Adjudication Procedure Manual contemplate that the burden of submitting evidence to establish entitlement to a pension after a previously awarded pension entitlement is terminated for excessive income is on the veteran. *See, e.g.,* 38 C.F.R. § 3.660(b) (1995); VA ADJUDICATION PROCEDURE MANUAL, M21–1, Part IV, ¶¶ 16.04, 16.05, 16.09; *cf. Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 151, 111 S.Ct. 1171, 1175, 113 L.Ed.2d 117 (1991) ("Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritively to interpret its own regulations is a component of the agency's delegated lawmaking powers."). Finally, this Court has previously held, in an analogous situation, that an application to reinstate a terminated pension is a new and original claim. *Shoen v. Brown,* 6 Vet.App. 456, 457 (1994); *see also Abernathy v. Principi,* 3 Vet.App. 461, 464 (1992) (subsequent pension claims are "new" rather than "reopened" because such claims are based upon facts that may have changed since the prior final decision).

The Court holds that the BVA's interpretation of Public Law 101–508 and its application of that law to the appellant's claim is reasonable and not in conflict with the statutory mandate, policy, or purpose. Accordingly, the decision of the BVA with respect to the denial of a reinstatement of benefits will be affirmed.

## IV. CONCLUSION

Upon consideration of the record and the briefs of the appellant and the Secretary, the March 1, 1994, decision of the Board of Veterans' Appeals is AFFIRMED.

KRAMER, Judge, concurring:

I concur, but arrive at the result reached in Part III by way of a slightly different analysis. In the absence of the appellant's pursuit of appellate review (with the filing of a Notice of Disagreement and Substantive Appeal) as to the regional office's August 1990 termination of adjudication, such termination became final one year after the date of such determination. As a consequence, the only avenue open to the appellant to reestablish such benefits was the filing of a new claim, an action he took with his February 1991 letter to the regional office (which letter clearly constituted the filing of a new claim rather than a disagreement with the August

1990 termination decision). As the filing of this new claim occurred after the effective date of Pub.L. No. 101–508, compliance with that statutory provision was mandatory, rather than discretionary, on the part of the Secretary. Thus, it cannot be argued that *Karnas v. Derwinski*, 1 Vet.App. 308 (1991), requires that the old version of 38 U.S.C. § 1502 (equating post-age 65 status with total and permanent disability) apply in that the Secretary promulgated his revision of 38 C.F.R. § 4.17 during the pendency of the appellant's new claim.