# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-48

MACK A. MCCORMICK, APPELLANT,

V.

HERSHEL W. GOBER,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 11, 2000                    Decided  August 18, 2000    )

*Peter J. Meadows*, of Winter Park, Florida, for the appellant.

*Monique Allen*, with whom *Leigh A. Bradley,* General Counsel; *Ron Garvin*, Assistant General Counsel; and *Joan E. Moriarity*, Deputy Assistant General, all of Washington, D.C., were on the brief, for the appellee.

Before KRAMER, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, Korean Conflict veteran Mack A. McCormick, appeals through counsel a December 16, 1997, Board of Veterans' Appeals (BVA or Board) decision that denied as not well grounded his claim for Department of Veterans Affairs (VA) service connection for loss of vision.  Record (R.) at 2.  The appellant filed an informal brief and a reply, and the Secretary filed a motion for single-judge affirmance.  Subsequently, counsel for the appellant entered an appearance and was permitted to submit an additional brief, to which the Secretary has filed a response.  This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons that follow, the Court will deny the Secretary's motion and vacate the BVA decision and remand the matter.

## I. Background

The veteran had active service in the U.S. Army from October 1953 to October 1955, including service in Korea. R. at 9. The record on appeal (ROA) contains February 1955 service medical records (SMRs) that described treatment for a right-wrist fracture. R. at 13-15. His separation examination medical record described his eyes as "normal" and indicated that his uncorrected vision was "20/20". R. at 11. No other SMRs are contained in the ROA, and there is no record of subsequent National Guard service, although it seems clear that the veteran had such service. *See*, *e.g.*, R. at 56 (statements from persons who served with veteran in "United States National Guard" in 1956); R. at 67 (affidavit from veteran's "unit commander while he was a member of the Florida National Guard").

In April 1978, the VA regional office (RO) in St. Petersburg, Florida, apparently sent to the National Personnel Records Center (NPRC) a "Request for Information". R. at 19. The NPRC's response indicated that in 1978 there were "[n]o medical records on file at NPRC" (*ibid.*) and on April 21, 1978, the VARO sent to the veteran a letter that stated: "Due to the fire at the [NPRC], there may be a delay in obtaining your [SMRs]." Supplemental (Suppl.) R. at 13.

In February 1995, the veteran submitted to the RO a claim based on an asserted "loss of vision as a result of having pink eye while stationed at Fort Benning[, Georgia.]" R. at 21. In April 1995, the RO sent to the veteran a letter stating: "Because of the long period of time that has elapsed since your discharge from military service, your [SMRs] may be difficult if not impossible to obtain." R. at 42. The RO requested that the veteran provide evidence of any or each of the following: "[T]reatment in service" for his claimed condition; details regarding the "full organizational designation . . . to which [he was] assigned at the time that the" claimed condition was "incurred or aggravated"; copies of any SMRs in his possession; "[s]tatements from persons with whom" he had served or from family members; and medical records "to demonstrate . . . continuity of treatment" since service. *Ibid.* The RO did not advise the veteran that his SMRs had been destroyed by fire. *See* R. at 42-43. In June 1995, the RO obtained a release from the veteran and sought copies of any medical records in the possession of the Fort Benning Army Hospital (R. at 49), which responded that "[t]he requested medical records ha[d] been retired to [the NPRC]" (R. at 50). The Secretary conceded at oral argument that the RO did not thereafter "follow up" by contacting

the NPRC for those or any other records located there. *See also* R. at 5 (BVA decision noting that "[a]lthough the [NPRC] reported in 1978 that the veteran's [SMRs] had been involved in the fire at that facility, the veteran's claims folder includes a copy of his examination for release from active duty in 1955").

In August 1995, the RO determined for the following reason that the veteran's claim was not well grounded: "[SMRs] are completely silent for complaints, treatment[,] or diagnosis of any pink eye." R. at 23. (The Court assumes that the SMRs referred to by the RO were the February 1955 SMRs (R. at 13-15) and the SMR of his separation medical examination (R. at 11) contained in the ROA, notwithstanding that the RO decision listed as the evidence before it "[SMRs] for the period 10-25-53 to 10-05-55" (R. at 23), because no other SMRs appear in the ROA, because the BVA did not address any other SMRs, and because the parties have not suggested that any other SMRs are of record to date.) Later that month, the veteran submitted additional recent medical evidence in the form of March and April 1993 VA medical records that diagnosed presbyopia of the left eye, early cataracts, and a remote cornea scar of the right eye. R. at 28-32. In October 1995, the RO issued a second decision denying his claim as not well grounded (R. at 38-39) and, later that month, the veteran submitted a statement in which he asserted that "pink eye developed in NCOS leadership school" at Fort Benning and that he had "had to wear glasses since that time". R. at 53. He also stated: "Aggravation of that condition was caused by night-driving . . . and welding, cutting[,] and torching at the shop/Ft. Benning, GA. (1953, 1954, 1955 time frame)". *Ibid.*

In November 1995, he submitted a statement signed by three people who averred that they had served with him "in the United States National Guard . . . during the year 1956" and that he "wore prescription glasses during [that] time period". R. at 56. Later that month, Dr. Hazouri, a private opthamologist, submitted a statement that he had examined the veteran in August 1993 and had found that his "[c]orrectable vision was 20/20 on the right and 20/25 on the left", that "[o]cular tensions were normal", and that "[c]ataracts were present". R. at 59. Attached thereto were copies of Dr. Hazouri's medical records showing treatment in March 1982, May 1989, August 1993, and October 1995. R. at 61-62. Also in November 1995, the veteran submitted four statements from lay persons (R. at 64-67), including one from a colonel who stated that he was the veteran's "unit

3

commander while he was a member of the Florida National Guard and at that time . . . he had a restriction to wear glasses on his operators permit". R. at 67.

In April 1996, the veteran testified under oath before the RO that he had had pinkeye in service. R. at 74-75. He stated that he had been told to wear dark glasses and had "been wearing dark glasses ever since then". R. at 75. He also stated that "ever since" he was in the service he had had pinkeye. R. at 76. At the hearing, the veteran submitted private medical records dated in April 1996 that diagnosed mild cataracts of both eyes. R. at 86-87. In his Substantive Appeal to the BVA, the veteran "noted" that his "complete [SMRs] are unavailable for review as they were assumed to have been destroyed by the fire at the [NPRC] in 1973." R. at 94. In the December 16, 1997, BVA decision here on appeal, the Board denied as not well grounded the veteran's claim for service connection for loss of vision due to pinkeye. R. at 2.

At oral argument on July 11, 2000, the Secretary agreed to submit a supplemental memorandum regarding (1) the status of a proposed amendment to 38 C.F.R. § 3.159 (1999) (regarding VA's duty to assist claimants) and (2) the authority of the Under Secretary for Benefits to issue the August 1999 letter discussed in part II.B., below. He submitted responses on July 14, 2000, and July 28, 2000, on these topics, respectively.

## II. Analysis

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). For a service-connection claim (here under 38 U.S.C. § 1110) to be well grounded, there generally must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *see also Elkins v. West*, 12 Vet.App. 209, 213 (1999) (en banc) (citing

*Caluza*, *supra*, and *Epps v. Gober*, 126 F.3d 1464, 1468 (Fed. Cir. 1997) (expressly adopting definition of well-grounded claim set forth in *Caluza*, *supra*)). This evidence as to these three *Caluza* elements need meet only a threshold that is "'unique and uniquely low'" in order to show well groundedness; that is, the "claim need only be 'plausible'." *Beck v. West*, __ Vet.App. __, __, No. 97-1884, 2000 WL 819397, at *5 (June 27, 2000) (quoting *Hensley v. West*, 212 F.3d 1255, 1261-62 (Fed. Cir. 2000)).

In this case, the Board denied the veteran's claim as not well grounded and, in so doing, did not require that the RO request copies of the veteran's SMRs from the NPRC. The Board concluded "that the veteran has not presented a well-grounded or plausible claim with respect to service connection for defective vision." R. at 5. The Board also stated: "As a consequence [of the veteran's not having submitted a well-grounded claim], no duty to assist the veteran [was] triggered under 38 U.S.C. § 5107." R. at 5-6. The appellant does not, in essence, challenge the Board's negative determination on well groundedness, and, in view of the Court's holding in part II.B., below, we need not review that determination.

## A. Manual M21-1 Arguments

The appellant's primary contention is based on what he asserts is VA's failure to fulfill certain duties arising from provisions set forth in the VA Adjudication Procedure Manual, M21-1 [hereinafter Manual M21-1] relating to the adjudication of cases where SMRs have been destroyed in the 1973 NPRC fire [hereinafter referred to collectively as the fire-related-case provisions]. Appellant's Additional Brief at 5-14. The Secretary counters that, because the fire-related-case provisions are raised for the first time before the Court and were not raised to the BVA, "the Court should decline to exercise its jurisdiction to consider . . . on appellate review" the appellant's arguments based on the fire-related-case provisions, and urges the Court to affirm the BVA decision on the ground that the veteran failed to exhaust his administrative remedy as to those Manual M21-1-based arguments. Secretary's Response at 4 (citing *Stuckey v. West*, 13 Vet.App. 163 (1999)).

Recently, in *Maggitt v. West*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that this Court "may hear legal arguments raised for the first time with regard to a claim

that is properly before the court, [but] it is not compelled to do so in every instance." *Maggitt*, 202 F.3d 1370, 1377 (Fed. Cir. 2000). The Federal Circuit explained:

> [W]hether to invoke the exhaustion of administrative remedies doctrine against a party -- with the effect that the party's arguments go unheard -- is case-specific. [*McCarthy v. Madigan*, 503 U.S. 140,] 146 [(1992)]. The test is whether the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve. *See id.* Those institutional interests are, in the main, to protect agency administrative authority and to promote judicial efficiency. *See id.* at 145. . . . If an agency self-corrects and amends its ways . . . , judicial resources are conserved. *See id.* And even if the agency rejects the individual's arguments, in some instances a better record is made for appellate review of the agency decision. *See id.* at 145-[4]6.

*Maggitt*, 202 F.3d at 1370. The Federal Circuit left for this Court to resolve whether, as a rule, to remand, address, or refuse to hear arguments first raised to this Court, reasoning "th[at this] Court is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case, and that, over time, it will develop of [sic] body of law in its unique setting that will permit [a] comparable certainty in outcome [to that] that has occurred in other fields of law." *Id.* at 1378. Today, we take the first step toward creating that "body of law". *Ibid.*

In this case, the appellant did in fact raise argument to the BVA based on the Manual M21-1; however, he did not raise to the BVA the fire-related-case provisions of the Manual M21-1 that he now raises to this Court. *Compare* R. at 6 (BVA decision regarding Manual M21-1 provisions raised to it) *with* Appellant's Additional Brief at 7-8 (raising argument regarding fire-related-case provisions) *and* Appellant's Response to June 28, 2000, Court Order (providing copies of fire-related-case provisions). Review of the appellant's arguments based on the fire-related-case provisions requires inquiry as to at least the following four questions:

(1) Were the Manual M21-1 fire-related-case provisions in effect at any time during the course of the adjudication of this case? *Cf. Fugere v. Derwinski*, 1 Vet.App. 103, 109 (1990) (without adherence to Administrative Procedure Act notice-and-comment process and specific notice to public of intent to revoke Manual M21-1 provision protecting benefit entitlement, Secretary cannot revoke that provision).

(2) If so, were those provisions authorized by 38 U.S.C. § 5107(a) or any other lawful authority (such as section 5103(a))?

(3) If the fire-related-case provisions were authorized by law, were those provisions applicable to this case?

(4) If so, were those provisions complied with in this case?

The Court believes that BVA determinations on these four questions would be helpful to the Court's review of this matter and, further, that the first and third of these questions are peculiarly within the competence of VA to address. Hence, we will vacate the BVA decision and remand this matter for consideration by the BVA of the appellant's arguments based on the fire-related-cases provisions and of, inter alia, the above four questions. A remand will likely benefit the Court by producing "a better record . . . for appellate review of the agency decision" and, further, may result in the "agency self-correct[ing] and amend[ing] its ways", which, in turn, would "protect agency administrative authority" regarding the interpretation of its own issuances as well as "promote judicial efficiency". *Maggitt*, *supra*. The Court notes, however, that if the veteran's claim is found to be well grounded based on immediate development as a result of the remand that will be ordered pursuant to part II.B. of this opinion, then the question of the applicability of the fire-related-case provisions, at least at the well-groundedness stage, would become moot.

### *B. VBA Letter 20-99-60*

In addition, the parties have addressed at length an August 30, 1999, issuance of the VA Veterans Benefits Administration, captioned "VBA Letter 20-99-60" and signed by the Under Secretary for Benefits, regarding "[c]laims [t]hat [a]re [n]ot [w]ell-[g]rounded". August 30, 1999, VBA Letter 20-99-60 [hereinafter generally referred to as VBA Letter]. That letter was written in response to the Court's opinion in *Morton v. West*, 12 Vet.App. 477 (1999), *en banc review denied*, 13 Vet.App. 205 (1999), *appeal docketed*, No. 99-7191 (Fed. Cir. Sept. 15, 1999). It states under "New Policy" as follows:

> **Determine Well-Groundedness & Claimant Notification:** Effective immediately, each [RO] must determine if a claim is well[ ]grounded prior to beginning development of evidence. There may be multiple issues in each application for compensation. Each individual issue must be reviewed to determine if it is well[ ]grounded. If any particular issue is not well[ ]grounded, the [RO] must send the claimant a letter describing the evidence needed to establish a well-grounded claim. Draft sample letters are enclosed for your review and comments.

> **Immediate Development:** [SMRs] and VA medical center records are to be requested in all cases. These records are considered to be in VA custody. Private medical records or records from other Federal or State agencies are not in VA custody and will not be requested prior to a determination that the claim is well[ ]grounded.

VBA Letter, at 1. In other words, the VBA Letter provides that, although "each [RO] must determine if a claim is well[ ]grounded prior to beginning development of evidence", VA has undertaken an "**Immediate Development**" obligation to request SMRs and records from VA medical centers "in all cases" because "[t]hese records are considered to be in VA custody." *Ibid.*

The appellant's arguments based on the VBA Letter Immediate Development provisions have not yet been raised to the BVA. However, at oral argument, the Secretary's representative asserted that this letter constitutes a VA directive that is binding on its ROs. In addition, we note that the Secretary has proposed a regulation that would require ROs to undertake the actions directed by the VBA Letter Immediate Development provisions. *See* Well-Grounded Claims, 64 Fed. Reg. 67,528, 67,531 (1999) (to be codified at 38 C.F.R. § 3.159(b)(2)) (VA "proposes to authorize VA to request [SMRs] in claims for service-connected disability . . . where they have not already been associated with the claims file" because "in some cases, [SMRs] may contain evidence that will well ground certain elements of a claim"); Unified Agenda, 5 Fed. Reg. 23,401, 23,405 (2000) (final action was scheduled for "6/00/00"). Thus, VA's position as to the binding nature of the VBA Letter Immediate Development provisions is clear. Moreover, at oral argument the Secretary's representative took a position as to the statutory authority for that VA issuance, which we will discuss in detail below.

The Court does not find that there is a need for prior Board review of this matter because, unlike with respect to the fire-related-case provisions, it is clear that the VBA Letter is a current document, that VA intended that the document be binding on its ROs, that the Secretary has taken a position as to the statutory authority for the duties set forth in that document, and that that position is binding on the BVA. *See* 38 U.S.C. § 7104(c) (BVA bound by instructions of Secretary). Hence, the Court can see little benefit that would flow from a remand of this issue to the BVA, in contrast to our conclusion regarding the fire-related-case provisions, and we will proceed to determine whether the Immediate Development portion of the VBA Letter has the force of law. *See Maggitt*, *supra*; *cf. Fleshman v. West*, 138 F.3d 1429 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 947 (1998)

("reviewing court . . . [may] affirm[ ] an agency decision on a ground different from the one used by the agency if the new ground is not one that calls for 'a determination or judgment which an administrative agency alone is authorized to make' . . . . [or] it is clear that 'the agency would have reached the same ultimate result' had it considered the new ground" (citations omitted)).

At the outset, we note that although the Secretary's position taken at oral argument that the VBA Letter Immediate Development provisions were intended to have binding effect on the ROs to whom it was directed is persuasive, his position is not dispositive because "'[t]he particular label placed upon [an agency issuance] by the [agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive.'" *Fugere*, 1 Vet.App. at 106 (quoting *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 416 (1942) (citations omitted)); *see also Schuler Indus. v. United States*, 109 F.3d 753, 755 (Fed. Cir. 1997) (discussing, inter alia, whether "the Secretary [of the Treasury] viewed his statutory authority [to issue regulations] as limited to interpretation" for purposes of determining whether regulation issued by him was substantive in nature).

Whether or not the VBA Letter Immediate Development provisions have the force of law and thus created a duty that is enforceable against the Secretary in this Court depends upon whether the document is properly considered to be a substantive or merely interpretative administrative issuance. In *Fugere*, the Court held that a Manual M21-1 provision that "did not merely clarify or explain an existing rule or statute" was substantive, for the purpose of being enforceable against the Secretary, because it had "the force of law and narrowly limit[ed] administrative action", and "prescribe[d] what action must be taken in the initial levels of adjudication". *Fugere*, 1 Vet.App. at 107 (internal quotation omitted; citing, inter alia, *Guardian Federal Savings & Loan Ass'n v. FSLIC*, 589 F.2d 658, 666-67 (D.C. Cir. 1978)); *see also Paralyzed Veterans of America v. West*, 138 F.3d 1434, 1435 (Fed. Cir. 1998) ("case law has defined 'substantive rules' as those that effect a change in existing law or policy or which affect individual rights and obligations"); *Guardian Federal*, 589 F.2d at 664 ("an interpretative rule is merely a clarification or explanation of an existing statute or rule"). The Court noted that the Manual M21-1 provision at issue in *Fugere* was "more than a mere procedural guideline" and that "its placement in a procedural manual [did ]not disguise its true nature as a substantive rule." *Ibid.*

9

In addition, the Court has recognized that an administrative issuance can be substantive only when the action that the rule requires is lawfully authorized by statute. *See Morton*, 12 Vet.App. at 481. Similarly, a substantive rule cannot ***exceed*** the authority granted by statute. *See, e.g., Boyer v. West*, 12 Vet.App. 142, 144 (1999) ("to the extent that any Manual M21-1 provision might attempt to authorize a rating for non-service-connected hearing short of total deafness in both ears, such a provision would be inconsistent with the framework of the 38 U.S.C. §§ 1110 and 1131 [provisions] and would be unlawful"). For the following reasons, we conclude that the VBA Letter Immediate Development provisions meet the above criteria and are substantive in nature, and thus are enforceable in this Court against the Secretary.

As to the statutory authority for the action ordered by the VBA Letter Immediate Development provisions, at oral argument the Secretary's representative stated that that authority lies in 38 U.S.C. § 5107(a), which provides: "***Except when otherwise provided by the Secretary in accordance with the provisions of this title***, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a) (emphasis added). The "Except" clause, according to the Secretary, forms the basis for the narrow direction set forth in the VBA Letter Immediate Development provisions that ROs request copies of both SMRs and VA medical records in all cases, even prior to the submission of a well-grounded claim. "In *Chevron v. Natural Resources Defense Council*, [467 U.S. 837, 843 (1984),] the United States Supreme Court recognized that Congress frequently leaves certain details unspecified in a statutory scheme, and delegates rulemaking authority to an agency to fill in the details necessary to administer the statute." *Trilles v. West*, 13 Vet.App. 314, 323 (2000) (en banc). "[A]n interpretation of a statute by the administrative agency charged with administering it is entitled to deference to the extent that the administrative construction, whether reached by adjudication or by rulemaking, is not inconsistent with the statutory mandate and does not frustrate the policy that Congress sought to implement." *Hermogenes v. Brown*, 9 Vet.App. 75, 78 (1996) (citing *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31-32 (1981)); *see also* 38 U.S.C. § 501(a) ("[t]he Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws,

10

including -- (1) regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws").

Accordingly, the Court holds that the Secretary's interpretation of the "Except" clause of section 5107(a) as providing the statutory authority for the VBA Letter Immediate Development provisions is "not inconsistent" with section 5107(a), and that the duties constructed by those provisions do not frustrate the policy -- i.e., the well-grounded-claim requirement -- set forth by the Congress in section 5107(a). *Hermogenes*, *supra*. Therefore, we will accord his interpretation due deference. *See Trilles* and *Hermogenes*, both *supra*. We also note that any interpretative doubt as to whether the "Except" clause of section 5107(a) permits the Secretary to undertake such a request "'is to be resolved in the veteran's favor'". *Dippel v. West*, 12 Vet.App. 466 (1999) (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)); *Allen v. Brown*, 7 Vet.App. 439, (1995) (en banc) (applying *Gardner* in choosing between plausible statutory constructions of 38 U.S.C. § 1110).

The narrow exception to section 5107(a) provided for in the VBA Letter Immediate Development provisions meets the criteria set forth and applied by this Court in *Fugere*, *supra*. The VBA Letter's requirement that the RO "request" both SMRs and VA medical records (but no other government or private-medical records) "prior to a determination that [a] claim is well[ ]grounded", VBA Letter at 1, is obviously intended to do more than "merely clarify or explain", *Fugere*, *supra*, section 5107(a); in fact, it represents an implementation of the Secretary's specific authority to provide ***exceptions*** to that statute except where statutorily contraindicated. Moreover, the "duty to request" set forth in the VBA Letter Immediate Development provisions is a narrow duty, and those provisions clearly "prescribe[ ] what action must be taken in the initial levels of adjudication". *Fugere*, *supra*. Finally, we note that the VBA Letter Immediate Development provisions do more than merely interpret or reflect the requirements of section 5107(a); they establish a new and distinct duty, authorized by the "Except" clause in section 5107(a), to associate with a veteran's claims file records that "are . . . considered to be in VA custody". VBA Letter at 1; *see Fugere*, *supra* (substantive rule is one that does "not merely clarify or explain an existing rule or statute"); *see also Paralyzed Veterans of America*, *supra*; *cf. Animal Legal Defense Fund v. Quigg*, 932 F.2d 920, 927-28 (Fed. Cir. 1991) (applying principle that "rule which merely clarifies or explains existing law or

11

regulations is interpretative" to situation where rule at issue clarified existing law as set forth in opinion by Board of Patent Appeals).

Our analysis here flows logically from the Court's holding in *Morton*, *supra*; in that respect, the VBA Letter Immediate Development provisions are unlike the Manual M21-1 provisions at issue in *Morton*, *supra*. There, the Secretary had issued Manual M21-1 provisions that obviated completely the well-grounded-claim requirement set forth in section 5107(a) by requiring ***full factual development*** in ***all*** cases prior to the submission of a well-grounded claim. *See Morton*, 12 Vet.App. at 479 (noting the appellant's contention that VA did not assist him "by ***fully*** developing the facts pertinent to his claim" (emphasis added)). Because the Manual M21-1 provisions at issue there constituted an exception that swallowed the entire rule that a claimant must submit a well-grounded claim in order to obtain the mandatory VA duty to assist, the Court was constrained to find that those provisions did not have the force of law. *See Morton*, 12 Vet.App. at 485 ("[h]ere, the interpretation of the claims development procedures of the . . . Manual M21-1 and the C&P policy urged upon us by the appellant stands in direct contravention of the command of 38 U.S.C. § 5107"); *see also Hermogenes*, *supra*.

In contrast, the VBA Letter, by virtue of its limited application to SMRs and VA medical records, both of which are "considered to be in VA custody", VBA Letter at 1, is more akin to the regulation (38 C.F.R. § 3.203(c) (1993)) that was at issue in *Sarmiento v. Brown* and that required ROs to provide a particular form of assistance -- verification of service and dates thereof -- prior to the submission of a well-grounded claim. *Sarmiento*, 7 Vet.App. 80, 85 (1994) (en banc) ("the regulation does not make the Secretary's evidentiary duty contingent upon the submission of a well-grounded claim"). The Court there held that although the assistance described in the regulation was not ***required*** by section 5107(a) -- because no well-grounded claim had been submitted and thus "[t]he Secretary's statutory dut[y] to assist under [section] 5107(a) . . . [was] never triggered", *ibid*. -- the regulation nevertheless established a "regulatory duty" that was binding on VA, *id.* at 85-86. The regulation at issue in *Sarmiento* required only a narrow, minimal duty: That VA "seek evidentiary verification" from the veteran's service department in situations where evidence of service was not submitted by the veteran himself. Similarly, the VBA Letter Immediate Development provisions require only that VA request copies of records that are already considered to be in VA's possession

and apply, explicitly, prior to the submission of a well-grounded claim. *Cf. Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992) (per curiam order) (noting that some documents "are, in contemplation of law, before the Secretary and the Board and should be included in the record").

Hence, the Court holds that the VBA Letter Immediate Development provisions are substantive in nature and have the force of law so as to require that VA request copies of SMRs and VA medical records prior to making a determination as to whether a claim is well grounded. The appellant is entitled, then, to have his claim adjudicated in accordance with the VBA Letter duty to request SMRs and VA medical records, notwithstanding that that Letter was dated in August 1999, subsequent to the December 1997 BVA decision on appeal. *See Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"); *see also Dippel*, 12 Vet.App. at 473 ("the Court has applied *Karnas* to process-oriented administrative issuances that are binding on the Board" (citing *Bernard v. Brown*, 4 Vet.App. 384, 393-94 (1993) (holding that remand required for application of VA Gen. Coun. Prec. Opinion 16-92 (regarding BVA procedures), which was issued before appeal process was completed)). "[T]he Court has repeatedly applied *Karnas* to changes in the regulation-like provisions in [the Manual M21-1] relating to evidentiary rules and case-processing requirements for claims of service connection for post-traumatic stress disorder". *Dippel*, *supra* (citing, inter alia, *Moreau v. Brown*, 9 Vet.App. 389, 395 (1996)), and *Doran v. Brown*, 6 Vet.App. 283, 289 (1994) (applying, pursuant to *Karnas*, a Manual M21-1 provision that "became effective after the date of appellant's appeal to this Court")).

In this case, there is no evidence to suggest that VA complied with the VBA Letter Immediate Development duty *as to the instant claim* -- and the Secretary's representative conceded as much at oral argument. Although the Secretary argues that his effort in April 1978 met that VBA Letter duty in this case, that April 1978 letter to the NPRC was sent in the context of a wholly different claim and thus cannot meet the duty to request SMRs *in this case*. R. at 19. Moreover, the Secretary's representative also conceded at oral argument that the Manual M21-1 fire-related-case provisions reflect an increasing ability at the NPRC to reconstruct information that was contained

13

in records that were destroyed in the 1973 fire. Therefore, a request made today could very possibly yield a result different from that which the inquiry made in April 1978 produced. Hence, the Court will remand this matter for compliance with the VBA Letter 20-99-60 Immediate Development duty to request SMRs and VA medical records and for further adjudication, if necessary, consistent with this opinion. *See Doran* and *Karnas*, both *supra.*

### *C. Miscellaneous Matter*

Finally, the Court notes that the Board, in its adjudication of the instant claim, erred in its continuity-of-symptomatology analysis. In order to avoid repetition of that error on remand, the Court notes the following.

The second and third criteria for a well-grounded claim set forth in *Caluza*, *supra*, can also be satisfied under 38 C.F.R. § 3.303(b) (1999) by (a) evidence that a condition was "noted" during service or during an applicable presumption period; (b) evidence of postservice continuity of symptomatology; and (c) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the postservice symptomatology. *See* 38 C.F.R. § 3.303(b); *Savage v. Gober*, 10 Vet.App. 488, 495-97 (1997). In considering whether the veteran had submitted a well-grounded claim pursuant to § 3.303(b), the Board stated the following:

> [L]ay evidence submitted by the veteran . . . is probative also to the extent that it suggests a continuity of symptomatology from the veteran's military service. 38 C.F.R. § 3.303(b). However, . . . [i]t is not sufficient to show that the veteran reported problems with his vision or even that he wore corrective lenses. In this case, competent medical evidence is needed to identify the reason for the symptoms described . . . . ***The veteran must submit competent medical evidence associating his current eye symptomatology with injury or disease during his active service***."

R. at 5 (emphasis added). However, *Savage* and § 3.303(b) require only that a claimant submit competent evidence of a nexus between his present disability and his postservice ***symptomatology***, 38 C.F.R. § 3.303(b); *Savage*, *supra*. To the extent that the Board required otherwise, i.e., "competent medical evidence associating his current eye symptomatology with injury or disease ***during his active service***", the Board misapplied the continuity-of-symptomatology criteria from *Savage*, *supra*.

### III. Conclusion

14

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court vacates the December 16, 1997, BVA decision and remands the matter for expeditious further proceedings and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 7104(a), (d)(1); 38 C.F.R. § 3.303(b); VBA Letter; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). The Secretary's motion is denied. The appellant's Additional Brief and his July 5, 2000, response to the Court's June 28, 2000, order will be made part of his claims file on remand. On remand, he will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.