# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-48

Mack A. McCormick, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appellant's Application for Attorney Fees and Expenses

(Argued February 20, 2002                    Decided   October 17, 2002  )

*Daniel G. Krasnegor*, of Washington, D.C., with whom *Peter J. Meadows*, of Miami Beach, Florida, was on the pleadings, for the appellant.

*Ann G. Gawalt*, with whom *Tim S. McClain*, General Counsel; and *Joan E. Moriarty*, Acting Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court.  IVERS, *Judge*, filed a dissenting opinion.

STEINBERG, *Judge*:  The appellant, veteran Mack A. McCormick, previously appealed through counsel a December 16, 1997, decision of the Board of Veterans' Appeals (Board or BVA) that had denied as not well grounded his claim for Department of Veterans Affairs (VA) service connection for loss of vision.  *See McCormick v. Gober*, 14 Vet.App. 39, 41 (2000).  On August 18, 2000, the Court vacated that Board decision and remanded the matter for readjudication.  *Id.* at 50.  Currently pending before the Court is the appellant's application, timely filed through counsel, for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA).  The Secretary has filed a response in opposition to the application, and the appellant has filed a reply thereto.  For the reasons that follow, the Court will grant the EAJA application in part.

# I. Relevant Background

The relevant background of this case on the merits is set out in full in our prior opinion, *McCormick*, 14 Vet.App. at 41-43, and will not be repeated here. In that opinion, the Court stated: "The appellant does not, in essence, challenge the Board's negative determination on well groundedness, and in view of the Court's holding [as to VA Veterans Benefits Administration Letter 20-99-60 (the VBA Letter) (Aug. 30, 1999)], we need not review that determination." *Id.* at 43. Citing *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000), the Court went on to vacate the Board decision and remand, for consideration by the Board in the first instance, a matter not raised to or considered by the Board – the applicability to the appellant's case of the fire-related-case provisions of the VA Adjudication Procedure Manual M21-1 (Manual M21-1 or M21-1). In so doing, the Court set forth for Board consideration on remand four questions about the applicability of and compliance with these M21-1 fire-related provisions. *McCormick,* 14 Vet.App. at 44-45. The Court went on to hold that the provisions of the VBA Letter, issued subsequent to the December 1997 BVA decision, "were substantive in nature and have the force of law", thus requiring that VA request service medical records and VA medical center records in all cases, prior to determining well groundedness. *Id.* at 49. The Court then remanded the matter for compliance with the VBA Letter, citing, inter alia, *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). *McCormick*, *supra*. Finally, the Court noted, under an opinion part entitled "Miscellaneous Matter", the following:

> Finally, the Court notes that **the Board**, in its adjudication of the instant claim, **erred** in its continuity-of-symptomatology analysis. In order to avoid repetition of that error on remand, the Court notes the following.
>
> . . . In considering whether the veteran had submitted a well-grounded claim pursuant to [38 C.F.R.] § 3.303(b), the Board stated the following:
>
>> [L]ay evidence submitted by the veteran . . . is probative also to the extent that it suggests a continuity of symptomatology from the veteran's military service. 38 C.F.R. § 3.303(b). However, . . . [i]t is not sufficient to show that the veteran reported problems with his vision or even that he wore corrective lenses. In this case, competent medical evidence is needed to identify the reason for the symptoms described . . . . ***The veteran must submit competent medical evidence associating his current eye symptomatology with injury or disease during his active service.***

[Record] at 5 (emphasis added). However, *Savage*[*v. Gober*, 10 Vet.App. 488 (1997),] and § 3.303(b) require only that a claimant submit competent evidence of a nexus between his present disability and his postservice **symptomatology**, 38 C.F.R. § 3.303(b); *Savage*, *supra*. To the extent that the Board required otherwise, i.e., "competent medical evidence associating his current eye symptomatology with injury or disease **during his active service**", the Board misapplied the continuity-of-symptomatology criteria from *Savage*, *supra*.

*Id.* at 49-50 (first-sentence emphasis added). The Court concluded:

Upon consideration of the foregoing analysis, the [record on appeal], and the submissions of the parties, the Court vacates the December 16, 1997, BVA decision and remands the matter for expeditious further proceedings and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 7104(a), (d)(1); **38 C.F.R. § 3.303(b)**; VBA Letter; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this opinion . . . .

*Id.* at 50 (emphasis added).

The appellant then filed his EAJA application on December 4, 2001, seeking $19,816.02 in attorney fees and $333.76 in expenses. Application (Appl.) at 9. He argues in the application that he was a prevailing party because he received a remand and that the position of the Secretary was not substantially justified at the administrative stage because (1) the Board failed to address the M21-1 provisions and (2) the Board erred in its continuity-of-symptomatology analysis. Appl. at 3-6. In his March 20, 2001, response, the Secretary concedes prevailing-party status (Response (Resp.) at 7) but argues that his position was substantially justified (Resp. at 8-13). The Secretary also argues (for reasons that will be enumerated below) that, if the Court grants the appellant's application, the attorney time for which the appellant seeks compensation should be reduced by 38.1 hours. Resp. at 14-16. In his June 15, 2001, reply to the Secretary's response, the appellant reiterates his argument that the Board was not substantially justified and also opposes the Secretary's request to reduce the number of hours. Reply at 5, 12.

The appellant then filed a July 18, 2001, motion to file a supplemental application, with a supplemental application included seeking an additional $2,801.03 in fees and expenses for the EAJA litigation itself. On August 20, 2001, the Secretary filed a motion for clarification and/or to stay response to the appellant's supplemental application. On September 6, 2001, the appellant filed

3

an opposition to the Secretary's motion for a stay, along with a further motion to supplement the initial application with another supplemental application seeking (1) additional fees and expenses in connection with the preparation of that opposition to the Secretary's stay motion and (2) apparently, certain fees and expenses not included in the July 2001 supplemental application. The appellant's supplemental applications seek a total $3,506.23 in additional fees and expenses.

On February 11, 2002, the Secretary filed a notice of supplemental authority (noting the issuance of *Sachs v. Principi*, 15 Vet.App. 414 (2002)), an opposed motion for leave to file a supplemental response, and his supplemental response. In that supplemental response, the Secretary argues that the issuance of *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), *Sumner v. Principi*, 15 Vet.App. 256 (2001) (en banc), *Vaughn v. Principi*, 15 Vet.App. 277 (2001) (per curiam order), and *Sachs*, *supra*, has altered the prevailing-party landscape in such a way as to prevent the appellant from establishing that he is a prevailing party based on the remand he received in the case on the merits. Supplemental (Suppl.) Resp. at 4-6. On February 13, 2002, the appellant filed a notice of supplemental authority citing *Cycholl v. Principi*, 15 Vet.App. 355, 360 (2001), and stating that this opinion affects the discussion of whether it was error for the Board not to apply the M21-1 provisions. The appellant also filed, on February 15, 2002, (1) a notice of supplemental authority citing *Cole Energy Development Co. v. Ingersoll-Rand Co.*, 8 F.3d 607, 609 (7th Cir. 1993), and (2) an opposition to the Secretary's February 11, 2002, motion for leave to file a supplemental response.

## II. Analysis

### A. Jurisdiction

The appellant's December 4, 2000, EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B). In order to satisfy any applicable EAJA jurisdictional content requirements, an application must contain the following: (1) A showing that, by virtue of the Court's remand, the applicant is a prevailing party within the meaning of the EAJA; (2) a showing that the applicant is a party eligible for an award under the EAJA because his or her net worth does not exceed $2,000,000; (3) an allegation that the position of the Secretary was not substantially justified; and (4) an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B),

(2)(B); *Cullens v. Gober*, 14 Vet.App. 234, 237 (2001) (en banc). The appellant's EAJA application was thus timely filed and satisfies any EAJA jurisdictional content requirements. *See ibid.*

## B. Prevailing-Party Status

In order to receive an EAJA award, an EAJA applicant must be a prevailing party. *See* 28 U.S.C. § 2412(d)(1)(A) ("court shall award to a prevailing party . . . fees and other expenses"); *Sumner*, 15 Vet.App. at 260-61. Prevailing-party status is achieved by satisfaction of either of two criteria: (1) "[The] ultimate receipt of a benefit that was sought in bringing the litigation, i.e., the award of a benefit, or [(2)] . . . a court remand predicated upon administrative error," *Sumner*, 15 Vet.App. at 264 (citing *Buckhannon*, 532 U.S. at 603). Because the Court did not order the award of a benefit, this opinion will focus on the second *Sumner* criterion for attaining prevailing-party status, "a court remand predicated upon administrative error". *Ibid*. In *Sumner*, the Court held: "Because . . . in remanding the matter, the Court did not recognize administrative error, the remand was not predicated upon administrative error." *Sumner*, 15 Vet.App. at 265. We note that this Court has held that to demonstrate prevailing-party status where the Secretary has conceded error, the Court must have predicated its remand on that concession of administrative error. *See, e.g., Briddell v. Principi*, 16 Vet.App. 267, 271-74 (2002); *Smith (Shannon) v. Principi*, 16 Vet.App. 71, 73-74 (2002); *Cycholl*, 15 Vet.App. at 359.

The appellant argues that he is a prevailing party based on the second *Sumner* criterion because of the Court's finding regarding the Board's *Savage* error. The Secretary maintains that this was not a basis for remand and that, even if it was, it is not the type of error that should be sufficient to qualify one as a prevailing party. The second *Sumner* criterion, "a court remand predicated upon administrative error" (here by the Court "recogniz[ing] administrative error"), *Sumner*, 15 Vet.App. at 264, has three elements: (1) A court remand; (2) a court recognition of administrative error; and (3) the remand's being predicated on that error.

As to the first element, there is no question that there was a Court remand in this case. As to the second element, neither party contests that the Court found error here. We stress that *Sumner* requires only a court "recogni[tion of] administrative error". *Sumner*, 15 Vet.App. at 265. There is no mention in *Sumner* of an "acceptable" level of error, and, indeed, such a test would quickly become unmanageable, involving extensive relitigation of the merits at the EAJA stage. *See*

*Cullens, supra* (Kramer, C.J., concurring); *Mahl v. Principi,* 15 Vet.App. 37, 43 (2001) (Steinberg, J., dissenting). Although here there was no concession of error by the Secretary at the merits stage, as there was in *Briddell*, *Smith (Shannon),* and *Cycholl*, all *supra,* the Court unambiguously determined – even if such a determination was described by the Court as a noting ("we note") rather than a holding – that, based on *Savage*, *supra*, the Board had "erred in its continuity-of-symptomatology analysis" under § 3.303(b), *McCormick*, 14 Vet.App. at 49-50. The Court need not, and in fact should not, investigate at the EAJA prevailing-party stage the validity, type, or nature of the administrative error. Nor should the Court revisit at the EAJA stage the logic of the merits decision. The *Sumner* standard is an objective one. It is sufficient that the Court recognized that there was administrative error. *See Briddell*, 16 Vet.App. at 272 ("[t]here is not the slightest hint in *Sumner* or in any other opinion of this Court that prevailing-party status should be determined based on something other than what the Court actually did on the merits"). Accordingly, we hold that the Court "recognize[d] administrative error" in its merits opinion and that the second element is satisfied. *Sumner*, 15 Vet.App. at 265.

The third element of the second *Sumner* criterion relates to the connection between the remand and the Court's recognition of the Board error. *See Briddell, supra.* In determining whether a remand is "predicated" on administrative error, the Court looks to the underlying disposition on the merits. We note that in the *Sumner* case, the Court, having found no "administrative error" (i.e., the second element), had no need to address the third element and explain what constitutes a "remand predicated upon such error". *Sumner*, 15 Vet.App. at 265. The issue is, however, ripe in this case, and we, therefore, do so here. In arguing that the Court's *Savage* finding was not a basis for remand, the Secretary ignores the fact that in the instant case the Court's merits opinion (1) stated that "[*f*]*or the reasons that follow*, the Court will deny the Secretary's motion and vacate the BVA decision and remand the matter", *McCormick*, 14 Vet.App. at 41 (emphasis added), and (2) expressly cited to 38 C.F.R. § 3.303(b) in the "Conclusion", where the Court "remand[ed] the matter for expeditious further proceedings and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 7104(a), (d)(1); *38 C.F.R. § 3.303(b)*; VBA Letter . . . ." *McCormick*, 14 Vet.App. at 50 (emphasis added). Hence, the Court remanded in part in light of its recognition of the § 3.303(b)/*Savage* error, and the remand was, therefore,

"predicated upon administrative error", *Sumner*, 15 Vet.App. at 265. The third element of the second *Sumner* criterion for prevailing-party status is satisfied.

Accordingly, because there is a Court determination of § 3.303(b)/*Savage* error here and because the Court's remand language also clearly indicated that the remand was based on that § 3.303(b) error, we hold that the appellant has attained prevailing-party status due to a "remand predicated upon administrative error". *Sumner*, 15 Vet.App. at 264; *see also Briddell*, *supra*. In light of this holding, there is no need for the Court to consider whether the appellant was a prevailing party as to either of the other two grounds for remand here – the Manual M21-1 fire-related provisions regarding acquisition of VA and service-department records and the VBA Letter requirements for VA to obtain certain medical records.

### *C. Substantial Justification*

Under the EAJA, the Secretary has affirmative defenses to a fee award, one of which is to demonstrate that his position at both the administrative (BVA) and litigation (Court) stages was "substantially justified". *See* 28 U.S.C. § 2412(d)(1)(A) ("court shall award to a ***prevailing party*** . . . fees and other expenses . . . unless the court finds that the position of the United States was ***substantially justified***" (emphasis added)), (d)(1)(B); *Cullens*, 14 Vet.App. at 237-38; *Lematta v. Brown*, 8 Vet.App. 504, 506-07 (1996); *Doria v. Brown*, 8 Vet.App. 157, 161 (1995). (The other affirmative defense is to ask the Court to "determine[] that 'special circumstances make an award unjust.'" *Id*. at 162.) Once an appellant has alleged a lack of substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified in its administrative and litigation positions. *Cullens*, 14 Vet.App. at 237; *see also Locher v. Brown*, 9 Vet.App. 535, 537 (1996); *Stillwell v. Brown*, 6 Vet.App. 291, 302 (1994) (holding that substantial-justification query is one of reasonableness "in law and fact").

This Court has established the following standard to determine whether the position of the Secretary was substantially justified:

> [T]he VA must demonstrate the reasonableness, in law and fact, of the position of . . . VA in a matter before the Court, and of the action or failure to act by . . . VA in a matter before . . . VA, based upon the totality of the circumstances, including merits, conduct, reasons given, and consistency with judicial precedent and VA policy with respect to such position, and action or failure to act, as reflected in the record on appeal and the filings of the parties before the Court.

*Stillwell*, *supra*; *see also Cullens*, 14 Vet.App. at 238. The Secretary argues as to substantial justification that the Court should not consider arguments about the § 3.303(b) *Savage* ground because it was not a basis for remand and because "the Board's misstatement of *Savage* had no affect [sic] on the Board's denial of [the a]ppellant's claim" (Resp. at 13). Resp. at 8-13. "[R]easonableness is determined by the totality of circumstances, and not by any single-factor approach." *Stillwell*, 6 Vet.App. at 302. The Secretary fails on these defenses for essentially the same reasons that the Court held in Part II.B., above, that the appellant was a prevailing party. Considering that the Court ***explicitly*** found (1) that "the Board, in its adjudication of the instant claim, erred in its continuity-of-symptomatology analysis" and (2) that "the Board misapplied the continuity-of-symptomatology criteria from *Savage*" (an opinion issued more than one month before the BVA decision here), it is clear that the Board did not act "consisten[t] with judicial precedent", *Stillwell*, *supra.* We thus hold that the position of the Secretary as to this issue at the administrative stage was not substantially justified. Hence, we need not address the justification for the Secretary's position at the litigation stage. *See Cycholl*, 15 Vet.App. at 361; *see also Elcyzyn v. Brown*, 7 Vet.App. 170, 176 (1996).

### D. Reasonableness of Fees

"The Court has wide discretion in the award of attorney fees under the EAJA." *Chesser*, 11 Vet.App. at 501 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Chiu v. United States*, 948 F.2d 711, 713 (Fed. Cir. 1991); and *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996)). "[T]he 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting *Hensley*, 461 U.S. at 434). "The [Court] must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983). In that regard, the Court will consider whether the hours claimed were (1) unreasonable on their face, (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Hensley*, 461 U.S. at 430 n.3, or *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997), or (3) persuasively opposed by the Secretary. *See Chesser*, 11 Vet.App. at 502. This Court "may consider a number of factors, including whether the work performed was duplicative, if an attorney takes extra time due to inexperience, or if an attorney performs tasks normally performed by paralegals, clerical personnel, or other non-

attorneys", *Ussery*, 10 Vet.App. at 53, and "may properly reduce the number of hours claimed for time spent in duplicative, unorganized, or otherwise unproductive efforts", *Vidal*, 8 Vet.App. at 493.

The Secretary argues here for a reduction in fees of 38.1 hours, because he asserts that (1) the appellant's counsel spent too much time (33.2 hours) on a brief that consisted of six pages of argument and that contained only two arguments, one that the Court did not address substantively (the M21-1 argument), and the other that the Court did not address at all (a reasons-or-bases argument), in a case in which the record was "merely 106 pages long" (Resp. at 14); and (2) the appellant's counsel spent too much time (63.1 hours) preparing for oral argument, and that much of this time was due to the appellant's counsel's inexperience (and, in an exercise of billing discretion, he should not have billed for time spent on learning) (Resp. at 14-16). The appellant replies that the brief dealt with complicated issues and that, therefore, the entire amount of time was reasonable. Reply at 15-17. He argues further that the hours spent in preparation for oral argument were reasonable because "after the [a]ppellant filed his [b]rief, several significant cases, including *Maggitt*[, *supra*], and *Sims v. Apfel*[,] 120 S.Ct. 2080 (2000)[,] were issued that materially impacted the appeal before the Court", and because such preparation was essential to his counsel's fulfilling "his ethical duty to his client to provide diligent representation." Reply at 16.

Although arguments such as these might in certain cases be viewed as nothing more than unsupported assertions that should not serve as a basis to reduce the fees requested, that is not always the case. Under *Chesser*, the Court may, sua sponte, reduce fees that appear unreasonable on their face. In this case, the fees claimed by the appellant do appear to be unreasonable, both as to the brief and as to the oral argument. In this respect, the Secretary's arguments on these points are largely persuasive, and the appellant has offered little in rebuttal. Therefore, based on the Secretary's arguments and in light of the fact that the basis of the remand here was one recognized by the Court sua sponte and was not argued at all by the appellant, the Court will reduce the allowable hours here. However, the Secretary's request to reduce the amount by 38.1 hours fails to take into account the following two factors: (1) The appellant's counsel did, in the appellant's application, "in a good faith effort to avoid any question as to time spent for arguably administrative matters", reduce by five hours the total hours for which he sought compensation (Appl. at 8); and (2) the appellant offered a rationale as to at least *some* of the hours spent in preparation for oral argument, i.e., the need for

his counsel to review two new cases that had been issued after the filing of his brief (Reply at 15). Accordingly, in the exercise of its discretion, the Court will reduce by 30 hours the hours requested in the application, from 149.60 to 119.60 hours.

### E.  Supplemental Application and Stay Motion

The appellant has filed two motions to supplement his EAJA application to include attorney fees for the EAJA litigation.  The Secretary has filed an opposed motion for clarification or stay as to these matters.  The Secretary argues that "[a]ny assessment of the reasonableness of [the] supplemental application is contingent on the Court's ruling"; he further notes that "[n]o rule, express or otherwise, governs this matter in either directing the time for filing of the supplemental application or the Secretary's deadline to respond to the application." August 2001 Motion at 2.  On November 1, 2001, after the filing of both motions to supplement and the Secretary's motion, the Court adopted amendments to Rule 39 of its Rules of Practice and Procedure (Rules), to add the following:

> **(b) Supplemental application.**  An appellant or petitioner whose application described in subsection (a) of this rule has been granted in whole or in part may, not later than 30 days after the Court action granting such application, file a supplemental application for attorney fees and other expenses in connection with the submission or defense of such subsection (a) application.  See Rule 25.

> **(c) Response.**  Within 30 days after the date on which an application described in subsection (a) or a supplemental application described in subsection (b) is filed, the Secretary shall file and serve a response to the application or supplemental application, stating which elements of the application or supplemental application are not contested and explaining the Secretary's position on those elements that are contested.

*In re: Rules 39, 41, and 42 of the Rules of Practice and Procedure*, 15 Vet.App. CCCLX, CCCLXI (2001).  In the comment to this Rule change, it is noted:  "Subsection (b) is added to provide specifically for the submission, *once an initial EAJA application is granted*, of a supplemental EAJA application".  *Ibid.* (emphasis added).  Given the above-quoted amendment to Rule 39 and the comment thereto, the appellant's supplemental applications (which deal exclusively with the defense of the original application) would be considered premature, because they were submitted prior to a ruling on the initial application, if they had been filed after the adoption of the Rule 39

10

amendment. However, because the motions to supplement were filed before that amendment to Rule 39 was adopted and the Court is here granting in substantial part the appellant's initial EAJA application, the Court will grant the appellant's motions to supplement his initial EAJA application and will file as of the date of this opinion the supplemental applications that were submitted with the motions. *Cf. Stillwell*, 6 Vet.App. at 300 (holding that prematurely filed EAJA application "was not untimely . . . because the appeal period had not run"). Under Rule 39(c), the Secretary will hereafter have 30 days to file a response to those supplemental applications. As to the Secretary's motion for a stay, given that Rule 39(c) now provides the guidance that he helpfully sought as to the timing of a response and in light of our direction that the supplemental applications be filed on the date of the issuance of this opinion, we will deny the Secretary's motion as moot. *See Fritz v. Principi*, 16 Vet.App. 179, 180-82 (2002) (per curiam order).

### III. Conclusion

Upon consideration of the foregoing analysis and the pleadings of the parties, the Court grants the appellant's EAJA application in the reduced amount of $16,175.98. Pursuant to Rule 39(b), the Court grants the appellant's motions to file supplemental applications; the Clerk of the Court will file the appellant's supplemental applications as of the date of this opinion. Under Rule 39(c), the Secretary will have 30 days to file a response, and under Rule 39(d) the appellant will have 30 days to file a reply to the Secretary's response. *See* U.S. VET. APP. R. 39(b), (c), (d). The Court denies as moot the Secretary's motion for a stay and clarification. In view of the foregoing disposition, there is no need for the Court to act on either the Secretary's February 11, 2002, motion, or the appellant's February 15, 2002, opposition motion.

APPLICATION GRANTED IN PART.

IVERS, *Judge*, dissenting: The majority manipulates the clear language and intent of the underlying decision on the merits in this case to conclude that the appellant was a prevailing party for purposes of EAJA. The majority elevates what the Court called a "Miscellaneous Matter," related to an issue that the Court expressly stated it did not review, to a basis for remand. For the reasons stated herein, I find the manipulation to be disingenuous, and I respectfully dissent.

11

The majority has determined that the appellant was an EAJA prevailing party by declaring that the underlying remand was predicated upon administrative error, recognized by the Court in its statement that the Board erred in applying the continuity-of-symptomatology criteria. *McCormick v. Principi*, __ Vet.App. __, __, No. 98-48, slip op. at 6-7 (Oct. 17, 2002); *see McCormick v. Gober*, 14 Vet.App. 39, 49 (2000). In stretching to reach this conclusion, the majority has the tail wagging the dog.

In the decision on the merits in the underlying appeal in this case, the Court stated the following: "In this case, the Board denied the [appellant's] claim as not well grounded. . . . The appellant does not, in essence, challenge the Board's negative determination on well groundedness, and, *in view of the Court's holding in part II.B., below, we need not review that determination*." *McCormick*, 14 Vet.App. at 43 (emphasis added). In part II.B. the Court held (the dog) that the provisions of a VBA letter were substantive in nature, having the force of law, so as to require that VA request copies of service medical records and VA medical records before making a determination as to whether a claim is well grounded. *Id*. at 49. As noted by the majority here, the Court remanded for compliance with the VBA letter. *See McCormick*, __ Vet.App. at __, slip op. at 2.

At the end of the decision on the merits, as a preventive measure and cautionary note entitled "Miscellaneous Matter," the Court "noted" (the tail) that the Board, in its decision, had misapplied criteria for determining continuity of symptomatology in finding that the appellant's claim was not well grounded. *Id.* at 49-50. The Court had stated that it was remanding for further development, and then advised the Board not to misapply, as it had before, the criteria for determining continuity of symptomatology during readjudication of the claim. The latter instruction was advisory in nature because the Court had clearly stated that it need not review the unchallenged determination on well groundedness.

The majority in this EAJA matter now elevates what was non-precedential and advisory to a basis for remand on the merits. The fact that the Court, in the decision on the merits, stated that the Board's determination on well groundedness was not under review is certainly sufficient support for a conclusion that the Court's sua sponte comments regarding a shortcoming in the Board's process of making that determination were *not* a basis for the remand. In other words, contrary to the far-

12

reaching conclusion arrived at by the majority, the remand effected by the decision on the merits was *not* predicated upon the administrative error recognized by the Court in its advisory note.

The majority's manipulation of the  decision on the merits in this case is analogous to a post hoc rationalization, which is firmly prohibited in litigation. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991) ("'Litigating positions' are not entitled to deference when they are merely appellate counsel's '*post hoc* rationalizations' for agency action, advanced for the first time in the reviewing court.")  It is not unlike a post hoc rationalization for the majority now to take what it said in the decision on the merits in this case and turn it upside down to serve a particular result.

It is my opinion that the appellant was not a prevailing party in the litigation underlying this EAJA application, because the remand was not predicated upon administrative error.  The EAJA application should be denied.