This version includes the errata dtd 30Sep03 -e

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 01-501(E)

DANIEL E. ABBEY, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Decided    September 24, 2003    )

*Barton F. Stichman* and *James W. Stewart* (nonattorney practitioner), both of Washington, D.C., were on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *Joan E. Moriarty*, Acting Assistant General Counsel; *Darryl A. Joe*, Acting Deputy Assistant General Counsel; and *Barbara J. Finsness*, all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges.*

STEINBERG, *Judge*, filed the opinion of the Court and separate views.

STEINBERG, *Judge*: Before the Court is the appellant's January 17, 2002, application, filed through counsel, for attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA). The Secretary filed a response, and the appellant filed a reply thereto. The Court twice ordered supplemental briefing, to which both parties responded. For the reasons set forth below, the Court will grant the appellant's application.

**I. Background**

The appellant, through attorney Barton F. Stichman and nonattorney-practitioner James W. Stewart, previously sought review of a November 21, 2000, Board of Veterans' Appeals (Board or

BVA) decision that denied a Department of Veterans Affairs (VA) disability rating greater than 20% for service-connected residuals of a fracture of the left humerus. In October 2001, the Court granted the appellant's motion for remand, denied the Secretary's motion for remand, and vacated the Board decision because the Board had failed (1) to address in its decision the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, and (2) to analyze 38 C.F.R. § 4.59 (2000) in light of the specific medical evidence of record. *Abbey v. Principi*, No. 01-501, 2001 WL 1181652 (Vet. App. Oct. 1, 2001) (single-judge order) [hereinafter *Abbey I*].

In January 2002, the appellant filed an EAJA application seeking $2,647.15 in attorney fees and expenses. Application (Appl.) at 1. The appellant calculates the requested amount based on (1) 20 hours, at a rate of $120 per hour, spent by the senior litigation paralegal, Mr. Stewart, who is employed by the National Veterans Legal Services Program (NVLSP) and is admitted to practice before this Court as a nonattorney practitioner; (2) 1.5 hours spent by Mr. Stichman, a member of the Court's bar, at a rate of $140.95 per hour; and (3) expenses in the amount of $35.72. Appl. at 5-6. According to records of the Court, Mr. Stewart has been certified to practice under the supervision of Mr. Stichman in accordance with Rule 46(b)(1) of the Court's Rules of Practice and Procedure (Rules). In February 2002, the Secretary filed a response and the appellant filed a reply thereto. The Secretary concedes that the appellant has met the "predicate findings for an EAJA award" (Response (Resp.) at 1-2 (citing *Elcyzyn v. Brown*, 7 Vet.App. 170, 176 (1994))) and contests only what the appellant asserts is the appropriate hourly rate for the work of nonattorney-practitioner Stewart (Resp. at 4). The Secretary asserts that Mr. Stewart should be awarded, instead of the $120 per hour fee requested, a $90 per hour fee based on the Laffey Matrix, a chart based on the Consumer Price Index (CPI) and adopted by courts in the D.C. Circuit for calculating fees for both attorneys and paralegals; the Secretary asserts that the higher rate represents "an unreasonable and unsupported rate of compensation for nonattorney practitioner work before this Court". Resp. at 4, 13-14; *see Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995) (describing the Laffey Matrix as "a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983)", *aff'd in part and rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc)). Principally, the Secretary argues that Mr. Stewart's

2

"experience does not warrant payment of a higher rate [than $90 per hour] for a nonattorney practitioner." Resp. at 9-12. The Secretary urges the Court to adopt the $90 per hour fee suggested by the Laffey Matrix and thus reduce the total EAJA award to $2,047.15. Resp. at 13-15.

In reply, the appellant, inter alia, suggests that the Laffey Matrix and an alternative matrix from the United States Attorney's Office in D.C. are both (1) outdated because they are based on the prevailing market rates for legal assistants in D.C. in the 1980s and (2) "'somewhat crude'" because they do not adequately account for "an individual's skill, experience, and reputation". Reply at 7-9 (quoting *Covington*, 57 F.3d at 1109). The appellant argues that in the instant case the Secretary's proposed fee of $90 per hour for Mr. Stewart does not account for his skill, experience, and reputation in veterans law (Reply at 9-10), and that the reasonableness of the fee is demonstrated by eight previous cases in this Court where the Secretary has "willingly agreed" to pay fees at the $120-per-hour rate for Mr. Stewart's work as a nonattorney practitioner (Reply at 5-6, 13).

In April 2002, the Court stayed proceedings in this case pending the outcome of *Wilson v. Principi*, which also contained as the sole disputed issue the appropriate hourly rate for Mr. Stewart. *Abbey v. Principi*, No. 01-501, 2002 WL 745958 (Vet. App. Apr. 25, 2002) (per curiam order). On December 12, 2002, the Court issued an opinion in *Wilson* and determined, based on the evidence presented there and the Laffey Matrix, and also by analogizing Mr. Stewart's work to that of a senior paralegal in D.C., that $90 per hour was the prevailing market rate for a fee for Mr. Stewart's work in that case and "awarded $1,215 for non[]attorney practitioner fees for 13.5 hours at $90 per hour." *Wilson*, 16 Vet.App. 509, 511, 515 (2002) [hereinafter *Wilson I*]. Thereafter, the Court issued a briefing order in this case lifting the stay and ordering the parties to file memoranda addressing "why the prevailing market rate in this case should not be $90 per hour." *Abbey v. Principi*, 16 Vet.App. 543, 544 (2002) (per curiam order).

In his January 2003 response to the Court's briefing order, the appellant argues that the evidence presented in the instant case supports a fee award of $120 per hour for Mr. Stewart's work here. Memorandum (Mem). at 2. In support of that assertion, he presents evidence including (1) evidence attesting that Mr. Stewart is paid by the NVLSP at a higher rate than some attorneys working for that organization (Mem. at 8-9, Exhibit (Exh.) G-H); (2) evidence that Mr. Stewart has represented appellants before this Court in more than 200 cases (Mem. at 12-13); and (3) evidence

3

that the prevailing market rate for certain nonattorneys in D.C. varies depending on their work experience and that the $120 per hour sought here is within that prevailing-market-rate range (Mem. at 10-11, Exh. B-F).

On February 21, 2003, the Court denied reconsideration of *Wilson I*. *Wilson v. Principi*, 17 Vet.App. 19, 20 (2003) (per curiam order). In the Secretary's March 2003 memorandum response to the appellant's January 2003 memorandum, the Secretary argues that *Wilson I*, *supra*, and its reliance on the Laffey Matrix is controlling and that the additional evidence submitted by the appellant in the instant case was also submitted with the appellant's unsuccessful motion for reconsideration in *Wilson I*; thus, the Secretary contends that the Court "should reject the same arguments here." Mem. Resp. at 2-4. The appellant filed a reply that same month and argues that the Secretary presented no additional evidence in his memorandum to support his contentions and "does not address the issue whether the new evidence submitted by [the] appellant provides prima facie evidence of the prevailing market rate for non[]attorney[-practitioner] Stewart" or whether the prevailing market rate in the instant case should be "at least" $120 per hour. Mem. Reply at 2. The appellant maintains that the instant case is not controlled by *Wilson I*, *supra*, because the Court's determination of the prevailing market rate for an individual advocate "is a finding of fact based on the evidence submitted by the parties in an adversarial proceeding." Mem. Reply at 3. He further argues that his due process rights would be violated if he was estopped in the instant case from submitting evidence and participating in litigation on an issue of fact, the prevailing market rate for Mr. Stewart, that had been decided in *Wilson I*, *supra*. Mem. Reply at 3. In May 2003, the Court ordered additional briefing regarding the effect, if any, of section 403 of the Veterans Benefits Act of 2002, Pub. L. No. 107-330, §403, 116 Stat. 2819, 2833 (2002) (VBA), which was enacted on December 6, 2002, and includes authority for the Court under the EAJA "'to award fees and expenses, in an amount determined appropriate by the United States Court of Appeals for Veterans Claims, of individuals admitted to practice before the Court as non[]attorney practitioners.'" *Abbey v. Principi*, 17 Vet.App. 75, 76 (2003) (per curiam order) (quoting VBA § 403). Specifically, the Court requested "supplemental action from the parties" regarding the following issues:

> (1) Submission of supplemental briefing on the significance
> of VBA § 403 in terms of the Court's authority to award EAJA fees
> for the work of (a) Mr. Stewart in this case and (b) non[]attorney

4

practitioners in general, including whether the Court is authorized to establish its own fee schedule for the work of such practitioners; and

(2) Submission of supplemental briefing and supporting evidence regarding (a) the extent to which Mr. Stewart's employer is comparable to the large private law firms from which affidavits regarding the prevailing market rate have been submitted by the appellant in this case in support of his requested hourly EAJA rate for Mr. Stewart's work and (b) the extent to which Mr. Stewart's employer is comparable to any other firm or entity providing legal representation and the prevailing market rate at which the work of non[]attorney representatives and/or paralegals is billed for at such a firm or entity.

*Abbey*, *supra*.

On June 16, 2003, the appellant responded; he argues that there is no significance to the new statutory language included in VBA § 403 as applied to Mr. Stewart because "[t]he Court had authority to award EAJA fees for the work of Mr. Stewart both before and after the VBA," but noted that that section did "provide the Court with authority to award fees under the EAJA for the work of individuals whose work could not be compensated under the EAJA prior to the change in law – 'individuals admitted to practice before the Court as non[]attorney practitioners' who were not supervised by attorneys." Mem. Resp. at 4-5 (quoting VBA § 403). The appellant contends (1) that in light of VBA § 403, its legislative history, and the longstanding practice of courts to determine the prevailing market rate on a case-by-case basis, this Court does not have authority to create its own fee schedule (Mem. Resp. at 5-10), and (2) that "for purposes of calculating fees under a fee-shifting statute like the EAJA[,] which authorizes 'reasonable attorney's fees,' Mr. Stewart's employer is . . . 'comparable' to both 'large private law firms' and 'other law firms and entities providing legal representation'" (Mem. Resp. at 13-15 (quoting *Abbey*, 17 Vet.App. at 76, and citing *Blum v. Stenson*, 465 U.S. 886, 898 (1984), and *Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 933 (Fed. Cir. 2001))). Attached to the appellant's response memorandum is, inter alia, an affidavit from the sole partner of a small D.C. law firm who stated that his firm regularly billed "over $150 per hour" for the work of "[s]killed and specialized paralegals".

On July 21, 2003, the Secretary responded; he reiterates his argument that the parties here are identical to those in *Wilson I* and that the Court should follow that precedential opinion by

awarding Mr. Stewart EAJA fees at a rate of $90 per hour. Supplemental (Suppl.) Mem. at 6-7, 11. The Secretary (1) agrees with the appellant that "VBA § 403 now provides for the award of EAJA fees for non[]attorney practitioners whose work is not supervised by an attorney, whereas before the enactment of the VBA, the Court had no authority to award such fees" and (2) notes that the "VBA has no significance in this particular case" because under pre-VBA law Mr. Stewart was eligible to receive EAJA fees for his services as a supervised nonattorney practitioner. Suppl. Mem. at 3. The Secretary did not submit additional evidence as to whether large law firms are comparable to the NVLSP, and he asserts that that issue is not pertinent. Suppl. Mem. at 8. He notes that he "has never contested the fact that Mr. Stewart is well qualified." Suppl. Mem. at 8-9. Neither the Secretary here nor the appellant in his June 2003 response addressed in terms of the fee award in this case this Court's new authority under VBA § 403 to award as part of EAJA applications "fees and expenses, in an amount determined appropriate", for the work of nonattorney practitioners. *Abbey*, *supra*.

On August 4, 2003, the appellant submitted additional evidence, purportedly pursuant to Rule 30(b). *See* U.S. VET. APP. R. 30(b) (providing for party to advise Court of "pertinent and significant authority [that] comes to the attention of a party after the party's brief has been filed"). On August 18, 2003, the Secretary responded; he "urges the Court not to accept" the appellant's letter or the additional evidence enclosed with it. Because this submission was contemplated within the "supporting evidence" described in the Court's May 2003 supplemental briefing order (to be filed not later than 30 days after the date of that order) as contrasted with "pertinent and significant authority" as contemplated by Rule 30(b) and because the 30-day deadline under the May 2003 order has expired, the Court will not consider this additional evidence in the disposition of this matter.

## II. Analysis

This Court has jurisdiction to award reasonable attorney fees and expenses pursuant to 28 U.S.C. § 2412(d)(2)(F). The appellant's January 17, 2002, EAJA application was filed within the 30-day EAJA application period set forth in 28 U.S.C. § 2412(d)(1)(B) and satisfies all EAJA jurisdictional content requirements because the application contains the following: (1) A showing that, by virtue of the Court's remand, the appellant is a prevailing party within the meaning of the EAJA; (2) a showing that he is a party eligible for an award under the EAJA because his net worth

6

does not exceed $2,000,000; (3) an allegation that the position of the Secretary was not substantially justified; and (4) an itemized fee statement. *See* 28 U.S.C. § 2412(d)(1)(A), (1)(B), (2)(B); *Scarborough v. Principi*, 319 F.3d 1346, 1349-55 (Fed. Cir. 2003); *Bazalo v. West*, 150 F.3d 1380, 1383-84 (Fed. Cir. 1998); *Cullens v. Gober*, 14 Vet.App. 234, 237 (2001) (en banc).

In order to receive an EAJA award, an EAJA applicant must be a prevailing party. *See* 28 U.S.C. § 2412(d)(1)(A) ("court shall award to a prevailing party . . . fees and other expenses"); *Briddell v. Principi*, 16 Vet.App. 267, 271 (2002); *Sumner v. Principi*, 15 Vet.App. 256, 260-61 (2001) (en banc), *aff'd sub nom. Vaughn v. Principi*, __ F.3d __, 2003 WL 21707273 (Fed. Cir. July 24, 2003); *Cullens*, *supra*. The appellant has the burden of demonstrating prevailing-party status under the EAJA. *Ibid.* Prevailing-party status arises in either of two ways. The first is through a direction of the Court, evident within the terms of the particular Court decision upon which the appellant is basing the EAJA application, for VA to award VA benefits to the appellant. *Sumner*, 15 Vet.App. at 264-65. The second is through the grant of a merits-stage Court remand that was predicated upon administrative error. *Ibid.* In order for a remand to have been predicated upon administrative error, the remand must either (1) have been directed in a Court opinion, decision, or order that contained a Court recognition of administrative error or (2) have been granted on the basis of a concession of error by the Secretary. *McCormick v. Principi*, 16 Vet.App. 407, 411 (2002); *Briddell*, 16 Vet.App. at 271-72. The Court will not "investigate at the EAJA prevailing-party stage the validity, type, or nature of the administrative error." *McCormick*, *supra*. Accordingly, in the instant case, because the Court's remand was expressly predicated, in part, on the Court's finding that the Board erred under 38 U.S.C. § 7104(a) and (d)(1) in not discussing § 4.49, *see Abbey I*, 2001 WL 1181652, at *2, the appellant was a prevailing party for EAJA purposes. *See* 28 U.S.C. § 2412(d)(1)(A); *Sumner* and *McCormick*, both *supra*.

The Secretary does not defend his position in response to the appellant's allegation that the Secretary's position was not substantially justified, and the Secretary does not assert the affirmative defense that special circumstances make an award unjust. *See Cullens*, *supra* (noting that "[o]nce an appellant has alleged a lack of substantial justification, the burden shifts to the Secretary to prove that VA was substantially justified in its administrative and litigation positions"); *McCormick*, 16 Vet.App. at 412 (determining that, "[u]nder the EAJA, the Secretary has affirmative defenses to

a fee award, one of which is to demonstrate that his position at both the administrative (BVA) and litigation (Court) stages was 'substantially justified'"); *Chesser v. West*, 11 Vet.App. 497, 502 (1998) (noting that "'[s]pecial circumstances' is an affirmative defense as to which the government bears the burden of raising and demonstrating that such special circumstances militate against an EAJA award"); *Cook v. Brown*, 6 Vet.App. 226, 237 (1994) (concluding that Court need not address whether Secretary's position was "substantially justified" when Secretary did not assert such a defense but expressly conceded that issue), *aff'd*, 68 F.3d 447 (Fed. Cir. 1995). Hence, the only remaining issue is the appropriate EAJA fee to be paid for the work of nonattorney-practitioner Stewart, who, according to records of the Court, has been certified to practice before this Court under the supervision of Mr. Stichman in accordance with subsection (b)(1) of Rule 46.

### A. VBA § 403

New VBA § 403 provides:

> The authority of the United States Court of Appeals for Veterans Claims to award reasonable fees and expenses of attorneys under section 2412(d) of title 28, United States Code, shall include authority to award fees and expenses, ***in an amount determined appropriate*** by the United States Court of Appeals for Veterans Claims, of individuals admitted to practice before the Court as ***non[]attorney practitioners*** under subsection (b) or (c) of Rule 46 of the Rules of Practice and Procedure of the United States Court of Appeals for Veterans Claims.

VBA § 403 (emphasis added).

Rule 46(b) and (c) allows nonattorney practitioners to practice before this Court under the following circumstances:

> **(b) Admission of Nonattorney Practitioners to Practice.** A nonattorney of good moral character and repute who is --
>
> (1) under the direct supervision (including presence at any oral argument) of an attorney admitted to the bar of the Court, or
>
> (2) employed by an organization which is chartered by Congress, is recognized by the Secretary of Veterans Affairs for claims representation, and provides a statement signed by the organization's chief executive officer certifying to the employee's–

8

(A) understanding of the procedures and jurisdiction of the Court and of the nature, scope, and standards of its judicial review; and

(B) proficiency to represent appellants before the Court

may be admitted to practice before the Court upon filing with the Clerk a completed application accompanied by the applicable fee (payable by check or money order). In making the statement under this paragraph, the chief executive officer should be aware that knowledge of and competence in veterans law and the administrative claims process does not in and of itself connote competence in appellate practice and procedure.

**(c) Appearance in a Particular Case.** On motion and a showing of good cause, the Court may permit any attorney or nonattorney practitioner not admitted to practice before the Court, or any other person in exceptional circumstances, to appear on behalf of a party or amicus for the purposes of a particular case. Whenever a person is admitted to practice under this subsection, the person will be deemed to have conferred disciplinary jurisdiction upon the Court for any alleged misconduct in the course of, in the preparation for, or in connection with any proceeding in that case.

U.S. VET. APP. R. 46(b)(1), (b)(2), (c).

Rule 46 further requires that "[e]ach notice of appearance and pleading filed by a nonattorney practitioner must include the name, address, and signature of the responsible supervising attorney under subsection (b)(1) or the identification of the employing organization under subsection (b)(2)." U.S. VET. APP. R. 46(d)(3). The Court has held that the work of attorney-supervised nonattorney practitioners and attorney-supervised law students is "compensable under the EAJA at an appropriate rate". *McCracken v. Principi*, 14 Vet.App. 269, 274 (2001) (citing *Sandoval v. Brown*, 9 Vet.App. 177, 181 (1996) (holding EAJA fees available for work of attorney-supervised law students)).

"'The starting point in interpreting a statute is its language.'" *Lee (Raymond) v. West*, 13 Vet.App. 388, 394 (2000) (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). As this Court explained in *Lee*:

The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result

9

demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd [sub nom. Brown v. Gardner]*, 513 U.S. 115 . . . (1994); *Fagan[ v. West]*, 13 Vet.App. [48,] 52 [(1999)]; *Curtis[ v. West]*, 11 Vet.App. [129,] 133 [(1998)]. "If the intent of Congress is clear, that is the end of the matter". *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Res[.] Def[.] Council, Inc.*, 467 U.S. 837, 842 . . . (1984)), *aff'ing* 4 Vet.App. 141 (1993) (mem.).

*Lee (Raymond)*, *supra*. Each "part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (internal quotation and citation omitted); *see also Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992). Also, as the United States Supreme Court stated in *United States v. Nordic Village*, "the settled rule [is] that a statute must, if possible, be construed in such fashion that every word has some operative effect." *Nordic Vill.*, 503 U.S. 30, 35 (1992); *see Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (determining that it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"). Although, where Congress has by statute directly addressed an issue, the reviewing court "'must give effect to the unambiguously expressed intent of Congress'", *Cottle*, *supra* (quoting *Chevron*, 467 U.S. at 842-43); *see also Barnhart v. Walton,* 535 U.S. 212, 217-18 (2002), where a statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor." *Brown*, 513 U.S. at 118; *see also Allen (Alfred) v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc) (applying *Brown v. Gardner* principle to rule in appellant's favor on question of statutory interpretation).

As noted above, at the time of the representation in the instant case, Mr. Stewart was an employee of the NVLSP, which is not a veterans service organization (VSO) chartered by Congress as described in Rule 46(b)(2); Mr. Stewart was thus admitted under Rule 46(b)(1) to practice before this Court "under the direct supervision . . . of an [admitted] attorney" – in this case, Mr. Stichman. *See* U.S. VET. APP. R. 46(b)(1). Consistent with Rule 46(d)(3)'s requirement regarding a supervising attorney's signature on the pleadings submitted by a supervised nonattorney practitioner, Mr. Stewart's EAJA application was co-signed by Mr. Stichman, as his supervising attorney. *See McCracken*, 14 Vet.App. at 272-74 (holding EAJA fees not available for work of nonattorney

practitioner admitted to practice under attorney supervision in accordance with Rule 46(b)(1) where supervising attorney did not sign appellant's pleadings filed in appeal of Board decision).

The term "nonattorney practitioner" in section 403 includes those admitted to practice before this Court pursuant to subsections (b)(1) or (b)(2) as well as those appearing under subsection (c) of Rule 46, which provides for the appearance of a nonattorney practitioner for purposes of a particular case without regard to attorney supervision. Hence, in order to read VBA § 403 so as to give effect to all its parts (the references to all of subsection (b) as well as to subsection (c) of Rule 46), *see* *Nordic Vill.*, *Colautti*, *Cottle*, *Meeks*, and *Talley*, all *supra*, that provision must be read to permit this Court to award EAJA fees "in an amount determined appropriate" for the practice before this Court of **both** unsupervised nonattorney practitioners and supervised nonattorney practitioners, such as Mr. Stewart.

### B. Reasonable Fees

The Court must next determine what amount constitutes reasonable attorney fees in this case. *See* 28 U.S.C. § 2412(d)(2)(A); *Teten v. Principi*, 16 Vet.App. 112, 118 (2002); *Perry v. West*, 11 Vet.App. 319, 327 (1998). "The Court has wide discretion in the award of attorney fees under the EAJA." *Chesser*, 11 Vet.App. at 501 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), *Chiu v. United States*, 948 F.2d 711, 713 (2001), and *Vidal v. Brown*, 8 Vet.App. 488, 493 (1996)). "[T]he 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee." *Blum*, 465 U.S. at 897 (quoting *Hensley*, 461 U.S. at 433). In determining reasonableness, the Court will consider whether the hours claimed are (1) unreasonable on their face; (2) otherwise contraindicated by the factors for determining reasonableness itemized in *Hensley*, 461 U.S. at 430 n.3, or *Ussery v. Brown*, 10 Vet.App. 51, 53 (1997); or (3) persuasively opposed by the Secretary. *Chesser*, 11 Vet.App. at 502.

Section 403 also addresses the issue of fee reasonableness and provides that nonattorney practitioners may be awarded EAJA fees "in an amount determined ***appropriate*** by the United States Court of Appeals for Veterans Claims." VBA § 403 (emphasis added). This clause provides this Court with wide discretion in determining what fee is "appropriate" for the work of a particular nonattorney practitioner.

The Committees on Veterans' Affairs stated in their Explanatory Statement regarding the final version of VBA § 403:

> The Committees expect that in determining the amount of reasonable fees payable to non[]attorney practitioners, the Court will apply the usual rules applicable to fees for the work of other non[]attorneys such as paralegals and law students based upon the prevailing market rates for the kind and quality of the services furnished. 28 U.S.C. § 2412(d)(2)(A). *See*[] *Sandoval*[, *supra*].

148 CONG. REC. S11338 (daily ed. Feb. 18, 2002); 148 CONG. REC. H9006-07 (daily ed. Feb. 14, 2002).

As to determining the prevailing market rate for EAJA fees, in *Blum*, the U.S. Supreme Court stated that reasonable attorney fees under the Civil Rights Attorneys Fees Award Act of 1976 were to be "calculated ***according to the prevailing market rates in the relevant community***, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum*, 465 U.S. at 895 (emphasis added). It is clear that Supreme Court caselaw regarding various attorney-fee statutes applies generally to the definition of reasonable fees under the EAJA. *See Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602, 603 n.4 (2001) (noting that Congress "has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes" and that the Supreme Court has "interpreted these fee-shifting provisions consistently"); *Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1379 (Fed. Cir. 2002) (concluding that Supreme Court's construction in *Buckhannon*, *supra*, of prevailing-party status "applies with equal force and effect to the EAJA"), *cert. denied*, 123 S. Ct. 871 (2003); *Thayer v. Principi*, 15 Vet.App. 204, 210-11 (2001) (holding that Supreme Court's definition of prevailing party in *Buckhannon*, *supra*, applied to the EAJA). Here, the "relevant community", as described in *Blum*, *supra*, is this Court and its unique system where, under Rule 46(b), both unsupervised nonattorney practitioners as well as nonattorney practitioners supervised by an attorney admitted to the bar of the Court may represent a VA claimant (including the presentation of oral argument), *see* U.S. VET. APP. R. 46(b), (c), (d), and, with respect to that representational function, their role is more closely akin to an attorney than to a paralegal. As the Supreme Court stated in *Blum*:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate

12

or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – *that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation*. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

465 U.S. at 896 n.11 (emphasis added). The Supreme Court in *Blum* recognized that the "'quality of [attorney] representation' . . . generally is reflected in the reasonable hourly rate" calculated according to the prevailing market rate. *Id.* at 895, 898-99.

In *Raney*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) discussed a "satisfactory evidence" test for determining attorney fees and noted that "something more than an attorney's own affidavit is required to establish the prevailing market rate for attorney[] fees." *Raney*, 222 F.3d at 938. The Federal Circuit concluded that "in future cases, the trial court should demand adequate proof from individuals familiar with the market of the community billing rate charged by *attorneys of equivalent skill and experience performing services of similar complexity*." *Ibid*. (emphasis added).

In *Wilson I*, the Court concluded that experience was not an appropriate factor to be considered when determining the prevailing market rate for a nonattorney practitioner; the Court's opinion there did not take into account the enactment of VBA § 403. In this regard, VBA § 403 requires a different outcome from that in *Wilson I*. Recognizing that the skill and experience of both supervised and unsupervised nonattorney practitioners admitted to practice in this Court may be exceptional, the Court will consider these factors for determining reasonable fees for these practitioners. Furthermore, there is no indication in the language of VBA § 403 that suggests that experience cannot be a factor in determining the "appropriate" EAJA fees; to the contrary, section 403 itself constitutes a recognition of the special role of nonattorney practitioners who practice before this Court.

In the instant case, Mr. Stewart sets forth in his affidavit his extensive experience litigating veterans' claims, including the following: (1) He previously worked for a Secretary-recognized VSO for 25 years before retiring, and his duties in that position included being a supervisor; (2) he was

13

admitted as a nonattorney practitioner before this Court in 1995 and has represented appellants in over 200 cases on appeal; and (3) he is currently a senior litigation paralegal for the NVLSP. Appl., Exh. D. Consequently, the Court holds that under VBA § 403 an EAJA fee of $120 per hour for Mr. Stewart is justified as a fee that is "reasonable" and "appropriate" based on his reputation, skill, and special expertise and qualifications as an experienced advocate in veterans law. VBA § 403; 28 U.S.C. § 2412(d)(2)(A); *see Blum*, *Raney*, and *Chesser*, all *supra*; *see also McCracken*, 14 Vet.App. at 274; *Sandoval*, *supra*. The Court will therefore approve a fee for his services in the amount of $120 per hour and grant the EAJA application. *See Pentecost v. Principi*, __ Vet.App. __, No. 00-2083(E) (Sept. 24, 2003).

### III. Conclusion

Upon consideration of the foregoing analysis and the pleadings of the parties, the Court grants the appellant's EAJA application in full, in the amount of $2,647.15.

APPLICATION GRANTED.

### Separate Views

STEINBERG, *Judge*: I am satisfied that the new provisions of VBA § 403 are applicable to the award of EAJA fees for the attorney-supervised work of Mr. Stewart. I write separately to discuss a possible conflict between the apparent plain meaning of the statutory language of VBA § 403 and the congressional intent expressed in the legislative history underlying the provision.

In accordance with VBA § 403, an **un**supervised nonattorney practitioner who is an employee of a recognized VSO that has been chartered by Congress (*see* U.S. Vet. App. R 46(b)(2) (noting that nonattorney "employed by an organization which is chartered by congress" and "recognized by the Secretary of Veterans Affairs for claim representation . . . may be admitted to practice before the Court")) may now file an EAJA application without the signature of an attorney and, as the following summary of legislative history shows, that change was the principal purpose of Congress in enacting VBA § 403. In light of the supervising-attorney-sign-off requirement in subsection (d)(3) of our Rule 46, however, this change could not apply to supervised nonattorney practitioners, such as Mr. Stewart. U.S. VET. APP. R. 46(d)(3) ("[e]ach notice of appearance and

14

pleading filed by a nonattorney practitioner must include the name, address, and signature of the responsible supervising attorney under subsection (b)(1)"). Because of this difference between nonattorney practitioners practicing in this Court under subsection (b)(1) and subsection (b)(2) of Rule 46 in terms of attorney supervision and the sign-off requirement, I believe that the legislative history of VBA § 403 should be examined to determine whether it demonstrates a clear and unequivocal intent that this remedial provision not be applied to supervised nonattorney practitioners. *See In re Fee Agreement of Smith*, 1 Vet.App. 492, 506 (1991) (Steinberg, J., concurring) (outlining caselaw holding that language of statute "'must yield to clear contrary evidence of legislative intent'" (quoting *Nat'l R.R. Passenger Corp. v. Passengers Ass'n*, 414 U.S. 453, 458 (1974)) and concluding that "facially unambiguous language is not conclusive because unequivocal, repeated, totally consistent, and highly authoritative legislative history provides a clear expression of legislative intent to the contrary").

The legislative history of VBA § 403 focused primarily on EAJA fees for unsupervised nonattorney practitioners who are employed by a recognized VSO that has been chartered by Congress. The report of the Senate Committee on Veterans' Affairs and the Explanatory Statement of the two Committees on Veterans' Affairs on the compromise agreement ultimately enacted as the VBA both evidence clearly that the congressional intent underlying VBA § 403 was to eliminate the attorney-sign-off requirement for EAJA applications to be submitted by an otherwise unsupervised VSO-employed nonattorney practitioner. S. REP. NO. 107-234, at 19 (2002); 148 CONG. REC. H9006 (daily ed. Nov. 14, 2002); 148 CONG. REC. S11338 (daily ed. Nov. 18, 2002). The Senate Committee report noted that the proposed change would "allow VSOs to be awarded fees under the EAJA for representation provided to VA claimants by their employee non[]attorney practitioners without the requirement that [the] attorney . . . sign the EAJA application"; however, neither that report nor the Explanatory Statement addressed supervised non-VSO nonattorney practitioners. S. REP. NO. 107-234, at 19. Indeed, the elimination of the sign-off requirement for unsupervised VSO nonattorney practitioners was the stated purpose of section 4 of S. 2079, introduced on April 9, 2002, by Senator Rockefeller, which bill formed the basis for section 503 of S. 2237 as reported by the Senate Committee, S. REP. NO. 107-234, at 2 (noting that S. 2237 as amended "include[ed] provisions from . . . S. 2079"), the provisions of which were identical to those enacted as VBA §

15

403; Senator Rockefeller stated that under his bill "unsupervised non[]attorneys [would] be given access to fee compensation under the EAJA[, which would allow] veterans organizations to represent even more veterans." 148 CONG. REC. S2416 (daily ed. Apr. 9, 2002).

If sole reliance were to be placed on the above-stated purpose as evidencing the only congressional intent, we could not apply VBA § 403 to an application submitted by a ***supervised*** nonattorney practitioner practicing under Rule 46(b)(1), because Rule 46(d)(3) would not permit such a pleading to be filed without the signature of a supervising attorney. Hence, we would have to construe the statutory provision either as doing more than eliminating the attorney sign-off requirement for unsupervised nonattorney practitioners employed by a VSO or construe the provision as applicable only to eliminating that sign-off requirement notwithstanding the statutory language of subsections (b)(1), (b)(2), and (c) of Rule 46. *See Nat'l R.R. Passenger Corp.* and *In Re Fee Agreement of Smith*, both *supra*. The former interpretation is appropriate for two reasons. First, none of the above legislative history suggests that removing the attorney sign-off requirement for unsupervised nonattorney practitioners was the ***only*** intended effect of VBA § 403, even though it might have been its primary purpose. Second, one piece of legislative history offers the broader interpretation that includes both supervised and unsupervised nonattorney practitioners under VBA § 403: In a floor statement on November 14, 2002, on final passage of the compromise agreement on S. 2237 that was thereafter enacted as the VBA, Representative Evans, the ranking minority member of the House Committee on Veterans' Affairs, stated: "Under the bill, non[]attorneys who are permitted to practice before the Court of . . . Appeals [for Veterans Claims] will be able to qualify for fees under the [EAJA] ***even if they are not supervised*** by an attorney." 148 CONG. REC. H9003 (daily ed. Nov. 14, 2002) (emphasis added).

Hence, notwithstanding the lack of articulated congressional intent in the legislative history from the two authorizing committees to benefit supervised nonattorney practitioners, the full legislative history, although generally pointing toward a more narrow purpose, does not contain the kind of unequivocal and consistent "clear contrary evidence of legislative intent" that would be necessary to countermand an essentially unambiguous statutory provision. *Nat'l R.R. Passenger Corp., supra*; *see In Re Fee Agreement of Smith, supra*.

Accordingly, as the Court's opinion holds, VBA § 403 should be applied so as to give effect to all its parts, *see United States v. Nordic Vill.*, 503 U.S. 30, 35 (1992); *Colautti v. Franklin*, 439 U.S. 379, 392 (1979); *Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Meeks v. West*, 12 Vet.App. 352, 354 (1999); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992), and in order to resolve any interpretive doubt in favor of a result that would provide a more competitive EAJA fee for a veteran's representative, *see Brown v. Gardner*, 513 U.S. 115, 118 (1994); *Allen (Alfred) v. Brown*, 7 Vet.App. 439, 448 (1995). The result is, as the Court holds today, that VBA § 403 is applicable to supervised nonattorney practitioners such as Mr. Stewart.